IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEE HUNT, as Personal Representative of the
Wrongful Death Estate of Ariza Barreras and
GABRIELLE VALDEZ, as the Guardian Ad Litem
For T.B. and F.B., minor children,

        Plaintiffs,

vs.                                                                     Case No. 1:19-cv-00700 KWR/KRS

STEPHANIE CROWNOVER, LEAH MONTANO,
GWENDOLYN GRIFFIN, KIM CHAVEZ-BUIE,
MICHELLE HILL and LORA VALDEZ, all in their
Personal Capacities acting under color of state law; and
THE NEW MEXICO CHILDREN, YOUTH AND
FAMILIES DEPARTMENT,

        Defendants.

## MEMORANDUM OPINION AND ORDER

        THIS MATTER comes before the Court upon the individual CYFD Defendants' Motion for Judgment on the Pleadings, filed on December 16, 2019 (**Doc. 20**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendants' motion is not well-taken and therefore is **DENIED.**

### BACKGROUND

        This case arises from the abuse of two foster children, F.B. and T.B., and the death of another foster child, Ariza Barreras. The three siblings were placed in foster care with Vanessa Dominguez and Justin Romero. Stephanie Crownover served as a respite foster care provider. On December 31, 2017, while in Crownover's care, Ariza Barreras was found dead. She had been placed in a car seat to sleep in overnight. She was found cold and not breathing, slumped forward

and her arm was caught in a strap. T.B. and F.B. were sick and dirty, and F.B. had a burn. A subsequent police investigation found that the house had no heat and was exposed to the elements in winter, the inoperable heater had exposed wiring, and the home was filthy and covered with animal urine and feces. The home did not have a bed, playpen, or crib suitable for an 11 month old child. Soiled clothes and diapers were packed in a corner, and the smell in the house was described by the officers as "awful", "almost unbearable" and "intolerable." **Doc. 1-1, ¶ 69.**[1]

Following Ariza Barreras' death, CYFD investigators found that (1) there was an injury and (2) a house member had previously been abused or neglected, (3) and F.B. and T.B. were in present or impending danger of serious harm. **¶ 74.** CYFD also found that the household environment placed the children in present or impending danger of serious harm. CYFD also found that Crownover did not demonstrate a protective role did not express empathy or sensitive to the children and did not have a positive attachment to them. These findings were directly contrary to prior studies performed by CYFD. **¶ 76.** CYFD also substantiated that F.B. suffered a burn on his hand while in Crownover's care.

This case asserts that the individual CYFD Defendants violated F.B., T.B. and Ariza Barreras' Fourteenth Amendment Substantive Due Process rights by abdicating their professional judgment or duty in (1) licensing the Dominguez/Romero and Crownover homes for foster care and (2) failing to investigate known issues, monitor the homes or take corrective action.

Plaintiff filed this case under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act, alleging the following relevant claims against the individual CYFD Defendants:

> Count II: Fourteenth Amendment Substantive Due Process claim against Defendants Montano, Griffin, Chavez-Bui, Hill and Valdez for failure to exercise professional judgment.

---

[1] Unless noted otherwise, all paragraph citations refer to the Amended Complaint, **Doc. 1-1.**

Count III: Fourteenth Amendment Substantive Due Process claim against Defendants Montano and Griffin (Failure to Exercise Professional Judgment);

Count IV: Fourteenth Amendment Substantive Due Process claims against Montano, Griffin, Chavez-Buie, Hill and Valdez (special relationship)

The individual CYFD Defendants moved for judgment on the pleadings on the three substantive due process claims and asserted qualified immunity. **Doc. 20.** This motion was fully briefed on March 2, 2020 and is ready for decision.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*

The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955—i.e., "that discovery

will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## DISCUSSION

Plaintiffs assert three separate civil rights claims against the individual CYFD Defendants, asserting that Ariza Barreras, T.B. and F.B. were deprived of their constitutional rights under the substantive due process clause of the Fourteenth Amendment. Therefore, the Court will analyze below whether Plaintiffs' well-pled allegations, taken as true under the legal standards set forth above, state a plausible substantive due process claim.

**I.      Qualified Immunity as to Individual Defendants**.

The individual CYFD Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Romero v. Story*, 672 F.3d 880 (10th Cir. 2012).

When a defendant moves for judgment on the basis of qualified immunity, the plaintiff bears a heavy two-fold burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must put forward evidence showing (1) that the defendant violated plaintiff's constitutional rights, and (2) the right at issue was clearly established at the time of the violation. *Id*. If the plaintiff fails to establish either part of the two-part inquiry, the court must grant the defendant qualified immunity. *Id.*

"Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Doing so, however, "subjects the defendant to a

more challenging standard of review than would apply on summary judgment." *Id.* (internal quotation marks omitted). "At the motion to dismiss stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized…." *Id.* (brackets and internal quotation marks omitted).

However, the Court notes that Defendants did not raise the clearly established prong of quailed immunity. Rather, Defendants solely argued that there was no constitutional violation. Plaintiffs noted this in their response, **Doc. 24 at 4,** and Defendants did not dispute this characterization of their argument in their reply brief. **Doc. 28.** Therefore, the Court concludes that Defendants have waived, for this motion only, review under the clearly established prong.

## II.   Substantive Due Process Law.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Generally, under Section 1983, "state actors are only liable for their own acts, not for acts of private violence." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors." *A.M. ex rel. Youngers v. New Mexico Dep't of Health*, 65 F. Supp. 3d 1206, 1241 (D.N.M. 2014) (citing *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

However, the Tenth Circuit has recognized an exception under the special relationship doctrine, where "the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Schwartz*, 702 F.3d at 579 (citing *J.W. v. Utah,* 647 F.3d 1006, 1011 (10th Cir. 2011)). The special relationship doctrine applies to foster children, who have a substantive due process right to "protection while in foster care." *Schwartz*, 702 F.3d

at 580 (citing *Yvonne L. ex rel. Lewis v. New Mexico Department of Human Services,* 959 F.2d 883, 892–93 (10th Cir. 1992)).

III. **Special Relationship Doctrine.**

State officials will be found to have violated a foster child's substantive due process rights when they either: (1) "knew of the asserted danger to [the foster child]; or (2) failed to exercise professional judgment with respect thereto," thereby causing the foster child's injuries. *J.W.*, 647 F.3d at 1011; *Whitley*, 184 F. Supp. 2d at 1157. Moreover, "failure to exercise professional judgment requires more than mere negligence: it requires an abdication of such professional responsibility, and such abdication must be sufficient to shock the conscience." *J.W.*, 647 F.3d at 1011 (citing *Johnson v. Holmes,* 455 F.3d 1133, 1143 (10th Cir. 2006); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1239 (10th Cir. 2018) ("to sustain a claim under the special-relationship doctrine, a plaintiff must demonstrate that the defendant "abdicated her professional duty *sufficient to shock the conscience*.").

"The special relationship triggers a continuing duty which is subsequently violated if a state official "knew of the asserted danger to [a foster child] or failed to exercise professional judgment with respect thereto, ... and if an affirmative link to the injuries [the child] suffered can be shown." *Schwartz v. Booker*, 702 F.3d 573, 580–81 (10th Cir. 2012). "[I]t implies abdication of the duty to act professionally in making the placements." *Yvonne L., By & Through Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 894 (10th Cir. 1992). The Court concludes that Plaintiff plausibly alleged that each individual CYFD Defendant abdicated their professional judgment as follows.

A. **Licensure approval for Dominguez/Romero Foster Home.**

La Familia, Inc prepared an 18-page home study for Vanesas Dominguez and Justin Romero. They recommended that a foster home license not be granted. **¶¶21-24.**

Nevertheless, Plaintiffs allege that Defendants Montano, Griffin, and Chavez-Buie summarily dismissed the report without providing sufficient reasons why and bypassed established professional procedures, practices, and standards. **¶¶ 23-28, 37, 101-103**. In other words, they failed to evaluate the suitability of the home and the ability of Dominguez and Romero to care for foster children. Defendants appear to raise a factual dispute that this decision was based on appropriate professional judgment, and that mere disagreements in professional opinion do not state a constitutional violation. Here, however, the Court must take Plaintiffs' well-pled allegations as true.

### B. Placement of Children in the Dominguez/Romero Foster Home.

Plaintiffs also allege that the individual CYFD Defendants abdicated their professional judgment in placing special needs children in the Dominguez/Romero foster home. Defendants Hill and Valdez placed the children in the Dominguez/Romero foster home, while Defendants Montano and Griffin continually monitored the placement. **¶ 37.**

Plaintiffs allege that Ariza Barreras and T.B. are special needs. They also allege that CYFD documents "do not contain any record that either of the foster parents received any training or instruction of any kind to qualify them to treat or care for special needs foster children in CYFD's legal and physical custody." **¶¶ 29 and 104**. Dominguez and Romero had only served as foster parents for 10 months, and had never cared for special needs children.

The CYFD file does not contain any record of what factors Defendants Hill and Valdez used in making the decision to place the children in the foster home of Dominguez and Romero. **¶¶40, 104**. Moreover, Dominguez and Romero only wanted to serve as respite care providers.

7

Plaintiffs allege that they were only licensed to be a respite foster parents. ¶27. Nevertheless, Defendants Hill and Valdez made the decision to place Plaintiffs in full-time care of respite foster parents. The fact that they did not identify any factors on which they relied to place the foster children in respite home full time, given La Familia's recommendations, states a plausible claim that they abdicated their professional judgment. ¶¶ **23-28, 37, 103**.

Defendants did not indicate they took any steps to evaluate the safety, adequacy or suitability, ¶ **41**, of a respite care home to serve as full time residence of special-needs children. *Valdez v. Varela*, 186 F. Supp. 3d 1197, 1276 (D.N.M. 2016) (complaint sufficiently alleged that social worker abdicated professional judgment by placing children without evaluating home or caretaking abilities of placement parents).

Therefore, the Court concludes that the complaint sufficiently alleged that Defendants Valdez and Hill abdicated their professional judgment by placing children in the Dominguez and Romero foster home without evaluating the home or caretaking ability of the parents.

Moreover, Defendants Montano and Griffin had a continuing duty to monitor the foster children's placement and remove them from an unsuitable home. By ignoring that the Dominguez and Romero were not capable of serving as full time foster parents and knowingly allowing Domingue and Romero to utilize Crownover's respite care services without going through the proper procedure, Defendants Montano and Griffin abdicated their professional duty.

**C.    Licensure Approval of the Crownover Foster home.**

Defendants Montano and Griffin performed the Crownover home study prior to licensure, and their recommendations and professional judgment in doing so is at issue.

Defendants assert that they did not make the final licensure decision or issue the physical license and cannot be held accountable. However, Plaintiffs plausibly alleged that Defendant

Montano and Griffin were responsible for the home study recommending approval of Crownover as a respite foster parent. ¶ **9.** For this motion, the Court must take these well-pleaded allegations as true. Moreover, "the special relationship exists between the state and the foster child, which triggers an accompanying, continuing duty imposed on state custodial officials thereafter – not a duty limited to the specific individual who executed the placement of the child." *Schwartz*, 702 F.3d 573, 581 (10th Cir. 2012). Plaintiffs allege that Defendants Montano and Griffin performed the Crownover home study and recommended approval for licensure. Defendants have not cited to any case law providing that they can hide behind the "final approval" of someone else, when that approval was alleged to have been based on their recommendations and investigation.

Plaintiffs allege that Crownover was not qualified to serve as a foster parent and should not have been allowed to serve as a foster parent for Ariza Barreras, T.B. or F.B. ¶ **114**. Plaintiff support this allegation with detailed facts:

- Crownover's financial condition was precarious and the home study evaluator noted that income was barely enough to meet the family's needs;
- Crownover had a criminal history, including an arrest for battery against her six year old granddaughter;
- Crownover admitted to a history of relationships with men who were emotionally abusive, used narcotics, and one who sexually abused her daughter; and
- Crownover had history of alcohol and drug abuse and associating with social groups involved in crime.

Defendant Montano was aware that at the time of the home study, the home lacked the necessary beds and bedding, and did not have a playpen or any adequate bedding in which Ariza Barreras could sleep. There are no records that Defendants checked on whether Crownover remedied these deficiencies.

Crownover had two substantiated investigations by CYFD – one for inadequate food and shelter and one for excessive and inappropriate discipline. Moreover, prior to the home study, Crownover gave significantly contradictory information in her SAFE questionnaire than what was

revealed in the home study, including: denying she was every emotionally abused, denying she had ever been investigated for physical or emotional child abuse, denying that she had been arrested for a criminal offense. There is nothing in the CYFD records showing that Defendants Montano and Griffin reconciled these discrepancies.

These allegations state a plausible claim that Defendants Montano and Griffin abdicated their professional responsibility in approving foster-care licensure for Crownover, when they knew she was not able to care for foster children.

### D. Respite Placement in the Crownover Foster home and Defendants' Monitoring of Crownover and her home.

Defendant Montano and Griffin knew that Crownover was being used for respite care for the three children. Defendants Montano and Griffin were responsible for monitoring the Dominguez and Romero home and Crownover home, while Defendants Valdez and Hill investigated specific allegations of abuse or neglect and found no safety threats. The allegations below apply to these Defendants.

1. <u>Unauthorized Respite Placement with Crownover</u>. The procedure for foster parents to secure respite care for children was to contact a CYFD social worker who would arrange for a state-licensed respite foster parent to care for the foster children placed with full-time foster parents. **¶ 44.** Defendant Montano would then provide the paperwork to document the temporary placement and assure that the foster parent received compensation. *Id.*

Contrary to this procedure, Defendant Montano had personal knowledge that Dominguez and Romero were arranging for respite care with Crownover on their own without CYFD's prior knowledge and approval. **¶47-48**. "Although inconsistent with CYFD's procedures, Defendant Montano never told Dominguez and Romero that they could not follow this practice or that this

routine was in any way improper." *Id.* Dominguez and Romero utilized this unauthorized procedure to secure respite care for all three children in December 2017.  ¶ **59**.

Two months before Ariza Barreras died in Crownover's care, Crownover said that she was no longer willing to care for the children at the same time, in response to allegations of neglect or abuse of the children.  Defendant Montano knew this fact and recorded it in her file.  Had Defendant Montano required that all requests for respite care be pre-arranged through her in accordance with CYFD practice and policy, then Defendant Montano would have had the opportunity to prevent all three children from being placed into Crownover's care.

Defendant Montano knowingly delegated her authority to make respite care placement decisions to the children's' foster parents in contravention of CYFD policy.  Therefore, Plaintiffs plausibly allege that this non-authorized delegation of respite care placement authority is an abdication by Defendant Montano of her professional judgment.  ¶ **130.**

2.  <u>Failure to professionally investigate or monitor Crownover</u>.  Before December 2017, there were numerous issues with Crownover's care which were not acted upon. Other foster parents who had utilized Crownover to provide respite care noted significant problems with her as a respite care provider, including that children were neglected and that Crownover failed to attend to a child's medical needs.  ¶¶ **49, 51, 52, 53, 55**.  The foster parents reported these incidents to Defendant Montano.  Defendant Montano and Griffin knew that Crownover did not have a crib or bed suitable for an 11-month-old.  Defendants also knew that the children suffered abuse and neglect, including bruises and bite marks in the home.  ¶ **69.**  Thus, Plaintiffs allege that Defendant Montano had personal knowledge of complaints related to Crownover's ability to care for the needs of foster children but declined to act.  ¶ **116.**

Defendant Valdez and Hill investigated specific allegations of abuse but found that the home was in good condition with no safety threats. ¶ 49. Given the subsequent police and CYFD investigation following Ariza's death detailing conscience-shocking conditions in the Crownover home, the complaint plausibly alleges that Defendants Hill and Valdez abdicated their professional judgment in performing these investigations.

Defendant Montano allegedly did not make contemporaneous notes but filed many notes after Ariza Barreras' death. These notes included many states that she had no concerns with the Crownover home, and no details explaining or justifying this conclusion. ¶ 56(a)-(d). There are no CYFD records indicating that Defendant Montano to address the identified concerns and ensure the home was safe and appropriate for children in foster care. *Id.*; *Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1145 (10th Cir. 2006) (summary judgment inappropriate where social worker's failure to investigate changes in child home could constitute "an abandonment of professional judgment."). Although Crownover violated CYFD policy and was placed on a corrective action plan, she was allowed to take a respite placement thereafter. ¶ 56(c).

Plaintiffs plausibly stated that inspections, monitoring and corrective actions taken by Defendants Montano, Valdez, Hill, and Griffin were inadequate. Defendants' reports were not entered into the CYFD computer system contemporaneously. These notes indicated that the home was in fine condition, while the police and CYFD investigations after Ariza Barrera's death indicated the home was in deplorable condition. ¶¶ 54, 56, 69(a)-(f). This raises a plausible inference that investigations either were not performed or were not performed professionally.

Although an independent monitor reported that the children were not well cared for, ¶ 62, the complaint alleges there was no follow up investigation. Even where Defendants Montano and Griffin did identify a problem and developed a corrective action plan, Plaintiffs' allege that the

12

record does not show what the problem was and whether it was in fact resolved. ¶ 56. Given the conditions of the home in the police investigation, Plaintiffs plausibly stated that Defendants abandoned their professional duty to monitor or investigate the Crownover home. *Schwartz*, 702 F.3d at 586 (deviation from professional judgment where defendant social workers failed property to investigate).

The Court concludes that the complaint's extensive allegations – some detailed above – state a plausible claim that Defendants abdicated their professional duty to investigate and monitor the Crownover home, and also ignored possible abuse or neglect, "chose not to further investigate such possible abuse, and ignored the danger posed by" Crownover's care. *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012), *citing Currier v. Doran,* 242 F.3d 905, 920 (10th Cir. 2001) (finding caseworker's failure to investigate bruises and continued allegations of abuse, as well as responsibility for court order granting custody to caretaker, could be conscience-shocking behavior sufficient to survive dismissal).

## IV. **Personal Liability and Causation.**

Defendants allege that Plaintiffs failed to adequately plead that Defendants actions caused the foster children's injuries. Based on the Plaintiffs' well-reasoned arguments on causation, **doc. 24 at 27-30**, and the extensive allegations recited above, the Court disagrees. Plaintiffs have plausibly alleged that Defendants' abdication of their professional duty in licensing, investigating, and monitoring the foster homes caused Ariza Barreras' death, and T.B.'s and F.B.'s injuries. *See, e.g., Matthews v. Bergdorf*, 889 F.3d 1136, 1149 (10th Cir. 2018) ("M.S. has alleged the third element of the special relationship exception as well. Paragraph 95 addresses causation: "Plaintiffs suffered actual physical injury and mental pain and suffering as a direct result of ... [ODHS] employees ... failing to properly investigate referrals of neglect and abuse of Plaintiffs, and failing

13

to protect Plaintiffs from the Matthews' neglect and abuse...."). Defendants are alleged to have abdicated their professional duty when there were known issues with the foster homes and foster parents. This more than satisfies the causation element.

Defendants appear to argue that the actions of Crownover were a "superseding cause" and the injuries were not foreseeable. If that were the case, no failure to investigate claim would be viable under the substantive due process clause of the Fourteenth Amendment Here, however, the complaint plausibly alleges that it was foreseeable that the children would be harmed and the Defendants failed to investigate known issues, or unprofessionally issued licenses.

Defendants also argue that the complaint fails to plead that each individual defendant violated the Plaintiffs' constitutional rights. The Court disagrees. To state a claim under § 1983, an injured person must allege a violation of a federally protected right and must show that the alleged deprivation was committed by an individual acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). In particular, "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1220 (D.N.M. 2015) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). As a result, in cases where a plaintiff alleges claims against government actors sued in their individual capacities under § 1983, "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective actions against the state." *Robbins*, 519 F.3d at 1249–50 (emphasis in original).

The complaint meets this standard. The complaint alleges in extensive detail that each individual CYFD Defendant acted or failed to act either in the (1) licensure of the homes or in the (2) investigation or monitoring of the foster children and foster homes.

## V. **Conscience Shocking.**

To state a substantive due process claim under the Fourteenth Amendment, Plaintiffs must also plausibly allege that Defendants' conduct was so outrageous as to shock the conscience. "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013). Whether such behavior shocks the conscience is a function of a defendant's conduct as a whole. *Schwartz,* 702 F.3d at 585. Courts look to the "degree of outrageousness and [ ] magnitude of potential or actual harm [ ] is truly conscience shocking." *Id.* at 585–86.

For the reasons stated above, the Court concludes that Plaintiffs' extensive allegation plausibly state that Defendants' actions were conscience shocking. *See Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) ("However, construing all inferences in plaintiffs' favor, as we must, the facts alleged could be a conscience-shocking abdication of duty sufficient to allege a constitutional violation.").

Crownover did not have a crib or sleeping arrangements suitable for an 11-month-old. Crownover placed Ariza in a car seat to sleep in overnight. Crownover awoke to find Ariza was cold and not breathing. She was slumped forward in her car set and her left arm was caught in the shoulder strap. T.B. and F.B. were found to be sick, had severe diaper rash and were soiled and unbathed. F.B. suffered a burn to his hand while in the Crownover home.

The police investigation found that the (1) although the outside temperature fell below 32 degrees, the heater was not operational and had exposed wiring. (2) there were holes in the ceiling and walls exposing the house to the outside elements; (3) the house did not have a crib or bed for an 11 month old child; (4) the house was "vile and filthy", the floors were filthy, rotten food was in the refrigerator and strewn on the counters, soiled clothes and diapers were piled in the corners, and trash was thrown under the beds; (5) dog urine and feces were on the floors in nearly every room in the house; (6) bathroom was awful and contained floating human feces; and (7) the odor in the house was described by officers as "awful, almost unbearable and intolerable." ¶ **69.**

Nevertheless, 30 days before Ariza died, Defendant Montano and Griffin noted that there were no concerns regarding the home. Defendants Valdez and Hill investigated specific allegations of abuse and found nothing. Plaintiffs pled in extensive detail why neither the Dominguez/Romero home nor Crownover home were suitable to be licensed as foster homes. ¶¶ **99-101; 114, 31-34**. This included allegedly ignoring reports and information indicating that they were not suitable to be foster parents. Notably, Defendants allegedly knew about some of the neglect and abuse – including the bruises, bite marks, cleanliness, and illness of the children, and knew that Crownover lacked the necessary crib for an 11-month-old. Nevertheless, Defendants licensed the homes and failed to investigate known issues or take corrective action. These failures were extensively alleged as to each individual CYFD Defendant, sufficient to notify each Defendant of their alleged unconstitutional actions. ¶¶ **8, 9, 10, 11, 12.**

"What the rules of notice pleading call for is a complaint alleging enough facts to raise a reasonable expectation that discovery will reveal evidence that a constitutional violation has in fact occurred." *Matthews v. Bergdorf*, 889 F.3d 1136, 1149 (10th Cir. 2018). Viewing each individual CYFD defendant's conduct in total, Plaintiff plausibly stated that each individual CYFD

Defendant abdicated their professional duty to appropriately license, investigate and monitor the Dominguez/Romero and Crownover homes, and such abdication was conscience shocking. *Id.* (failure to investigate claims was conscience shocking where "Matthews' foster home was dangerous and filthy, M.S. did not bathe frequently, his or her clothes were dirty"); *See Schwartz v. Booker*, 702 F.3d 573, 586 (10th Cir. 2012), *citing Johnson ex rel. Estate of Cano v. Holmes*, 455 F.3d 1133, 1145 (10th Cir. 2006) (failure to investigate or visit home).

## CONCLUSION

Defendants ably argues that Plaintiffs' allegations are incorrect or insufficient. However, for purposes of this motion only, the Court must take Plaintiffs' well-pled allegations as true. The Court finds that Plaintiffs' well-pled and extensive allegations state a *plausible* claim that each individual CYFD Defendant violated Ariza Barreras', T.B's, and F.B.'s Fourteenth Amendment Substantive Due Process rights.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleadings (**Doc. 20**) is **DENIED.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE